UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE WATSON,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.
_____/

Civil Case Number 21-11377
Criminal Case Number 16-20143
Honorable David M. Lawson

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

After a 14-day trial, a jury convicted petitioner Andre Watson of using interstate commerce facilities in the commission of a murder-for-hire, conspiracy to possess with intent to distribute controlled substances, and discharging a firearm during and in relation to a drug trafficking crime causing death. He was sentenced to life in prison, and his convictions and sentence were affirmed on appeal.

Watson now moves to set aside his sentence and convictions, raising four arguments set out in detail below. Because all of those arguments could have been raised on direct appeal, Watson has not identified a valid reason for his failure to do so, and his arguments are unpersuasive, his motion will be denied.

I.

The factual background of this case is summarized in the Sixth Circuit's opinion affirming Watson's conviction. *United States v. Watson*, 852 F. App'x 164, 166-67 (6th Cir.), *cert. denied*, 141 S. Ct. 2614 (2021). Watson served as an "enforcer" for defendant Deaunta Belcher, a drug dealer who had a "dope house" on Beniteau Street in Detroit, Michigan. Belcher joined a car fraud scheme run by co-defendants Darnell Bailey and Devin Wallace, which provided fraudulent personal information to drug dealers so they could purchase cars on credit from car dealerships.

Belcher and Wallace, however, did not get along. Eventually, Belcher offered Watson and defendant Stephen Brown a house and a car in exchange for killing Wallace. Brown and Watson went to a strip club in Dearborn to kill Wallace, but he escaped. *Ibid.*

On September 11, 2015, Bailey and Wallace had an intense argument at a car dealership. Belcher and Bailey then met at a gas station and discussed having Wallace killed. Belcher called Brown and then Watson and told them that Wallace was going to be in Dearborn at a previously-scheduled meeting. Later, Belcher called back and told Brown that the location for the meeting was the They Say restaurant. Brown, Watson, and a third man, Billy Chambers, then drove towards the restaurant. *Ibid.*

Bailey was the first to arrive at the restaurant and, at some point, Wallace called to say that he was outside in his car. Bailey went to Wallace's car and began talking to him. Belcher arrived with his daughter, but they left after a short time. Brown and Watson then received a call from Belcher letting them know to look for Bailey because he was standing outside of Wallace's car talking to him. When they arrived, according to Brown and Chambers, Watson got out of the car and shot Wallace. Responding law enforcement officers found Wallace dead in his car. At some point, Bailey gave $2,000 to Watson for the killing. *Ibid.*

Federal investigators learned of Watson's involvement in the murder through Chambers. They obtained Watson's cell phone records, which revealed that Watson was in contact with Belcher before and after the murders and was in the area at the time of the murder. Watson provided false information about the identities of his co-defendants, disputed his association with them, and denied having Belcher's number. However, Watson had Chamber's, Belcher's, and Brown's cell phone numbers in his contact list, and a toll analysis revealed 626 connections between his and Brown's phones over the 44 days preceding the murder.

After the jury convicted Watson of the murder, drug, and firearm offenses, he appealed, arguing that that 18 U.S.C. § 1958(a) was unconstitutional as applied to him, asserting that a cell phone cannot be used as an instrumentality of interstate commerce; that the jury instructions were erroneous; and that there was insufficient evidence to convict him of the conspiracy and firearms charges. On March 22, 2021, the Sixth Circuit affirmed his conviction on all counts. *Id.* at 167-72.

Watson filed a timely motion to vacate his sentence under 28 U.S.C. § 2255. He argues first that the government's witnesses and federal officials perjured themselves before the grand jury when they said that he was a member of the drug conspiracy, which, he says, he never knowingly joined. Second, Watson accuses those same individuals of perjury when they said that he used his cell phone as an instrument of interstate commerce connected to the murder, because there was no evidence that he was using the phone at the time of the killing. Third, he contends that he was not the one who actually killed Wallace, and the physical evidence does not show that he did. Fourth, he argues that his due process rights were abridged when he appeared before the jury in shackles.

The government counters that Watson's arguments are barred by his failure to raise them on direct appeal, and that in any event they lack merit. It asserts that the claim about appearing before the jury in shackles is simply false.

II.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). And he "must allege either: '(1) an error of

constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court observed:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*Frady*, 456 U.S. at 164-65; *accord Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (stating that "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal"). Where a defendant fails to assert claims on direct appeal and attempts to raise them in a § 2255 motion, "he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528.

All of the claims raised in Watson's collateral attack on his convictions and sentence are foreclosed because they were procedurally defaulted when he failed to raise them in this Court or

on direct appeal. Watson could have raised all of the claims on direct appeal, but he chose not to do so. A motion under section 2255 may not do service for a direct appeal. *Ibid.* Watson also has failed to demonstrate cause, prejudice, or his "actual innocence" of the crime of conviction, as he must to overcome the procedural default of his claims.

But even if he could make that showing, his motion fails on the merits. His arguments that prosecutors and law enforcement officers gave perjured testimony to the grand jury present some novel positions but also reflect some of his rejected appellate arguments. Although Watson captions his first two claims for relief as challenges to allegedly false testimony, the gravamen of his argument is that he is actually innocent and thus should not have been charged in the first place. But Watson has not made a credible claim that he is actually innocent of any of the crimes for which he was convicted. He presents no new evidence or facts sufficient "to undermine confidence in the result of the trial." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup v. Delo*, 513 U.S. 298, 317 (1995)). Instead, he attacks the factual sufficiency of his convictions, questioning the lack of physical evidence at trial and insisting that the testimony against him was false. But that is not sufficient to establish actual innocence, *Bousley*, 523 U.S. at 623, or implicate a fundamental and rare miscarriage of justice, *Shulp*, 514 U.S. at 314-15. Moreover, Watson already argued on appeal that there was insufficient evidence to convict him of the drug conspiracy charge. Absent a substantive change in the law, he cannot relitigate his appeal here. *See Lang v. United States*, 474 F.3d 348, 355 (6th Cir. 2007).

Second, Watson argues that he should not have been charged under section 1958 because cell phones are not instruments of interstate or foreign commerce — an argument that also is substantively identical to the one he made on appeal. There has been no intervening change in the law or other extraordinary circumstance that entitles Watson to relitigate that issue. *See id.* at 355.

Now, as when he appealed, the "caselaw unequivocally holds that 'cellular telephones, even in the absence of evidence that they were used to make interstate calls, [are] instrumentalities of interstate commerce.'" *United States v. Dais*, 559 F. App'x 438, 445 (6th Cir. 2014) (quoting *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)); *see also United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014). Again, a section 2255 motion may not be employed to reiterate arguments that were raised and answered on direct appeal. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (citing *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995)).

  Third, Watson has not made a viable claim that prosecutors or law enforcement agents lied about anything. To reverse a conviction based on perjured testimony, a petitioner bears the burden of demonstrating (1) that a statement was made that was actually false, (2) that the statement was material, and (3) that the prosecution knew it was false. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citing *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986)). Watson has not established any of those elements. He has not pointed to specific statements that prosecutors or officers made to the grand jury that were material and untrue. Nor has he identified anything in the record even suggesting that prosecutors or law enforcement knowingly offered false testimony. Rather, he expansively contends that the charges themselves constituted perjury. That does not make out a viable claim, however, and it is foreclosed by the jury's conviction of the petitioner on all three charges beyond a reasonable doubt. *See United States v. Ashrafkhan*, 821 F. App'x 428, 439 (6th Cir. 2020) (finding that testimony a petitioner alleged was perjured "merely represented a different view of the evidence that the jury apparently did not accept").

  None of the petitioner's first three arguments provide grounds for sentencing relief.

  The government asserts that Watson's assertion that the jury saw him in shackles is made up; he never appeared in restraints and there is nothing in the record that suggests that he was

-6-

shackled during trial. And Watson has not offered any cause for why he did not raise the issue of shackling at trial or on direct appeal. Nor, as explained above, has he demonstrated that he was actually innocent. This claim may not be reviewed in this collateral proceeding. *See Bousley*, 523 U.S. at 622-23.

Moreover, Watson does not clearly argue that he appeared in restraints during the "guilt phase" of the case, as opposed to the "penalty phase," that is, the sentencing hearing. In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id*. at 629. *Deck*'s holding, however, "concerned only visible restraints at trial." *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008). It is not entirely clear that Watson even contends that he was shackled "at trial." Rather, he alleges that he was shackled when he "enter[ed] into the . . . Court . . . and pleaded not guilty of the charges against him." Mot., ECF No. 337, PageID.4375-76. That may well be true, but it would not amount to due process violation. The rule prohibiting the use of physical restraints visible to a jury does not apply at arraignment, a proceeding that occurs before the judge. *Deck*, 544 U.S. at 626. The prohibition only applies where the jury actually sees the restraints. *Earhart v. Konteh*, 589 F.3d 337, 348-49 (6th Cir. 2009). Watson is not entitled to relief on this claim.

III.

The defendant's claims all are foreclosed by his procedural default, and the defendant has not demonstrated cause and prejudice to excuse the default or his actual innocence of the crimes of conviction. His claims also fail on the merits.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate sentence (ECF No. 337) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Date:   November 10, 2022